Good morning, Your Honors. May it please the Court, Michael Metier, on behalf of Appellate I'm sorry, excuse me for mispronouncing your name. I shouldn't have even given it a try. The S is silent. Okay. Everybody does that. I would like to reserve five minutes for rebuttal. Louisiana is a civilian state, which means that first and foremost we look to the Civil Code for guidance. And in the area of fault, Article 2315 is the bedrock of fault. It says essentially that anyone who causes harm to another is obligated to repay that harm. That same notion carries through into the lessor-lessee relationship, but it's even more strict because our Civil Code says that in general a lessor warrants that the premises is safe and free of any defects and that should any defective condition cause an injury, the lessor is obligated to repay it. Now, Louisiana does permit some sort of lessening of that responsibility as shown in Articles 2696 through 2699, but that lessening responsibility to allow a shifting of responsibility for defective conditions to the lessee must be by clear and unambiguous language with a few caveats. For purposes of this argument, we will concede that the lease agreement is clear and unambiguous even though it cites to a nonexistent statute. Louisiana revised statute 93221 is an abrogation of the general rules. It is, in fact, an immunity statute that has to be strictly construed. In an amended answer, one of the defendants pled 93221 as an affirmative defense, which means, like any other affirmative defense, such as contributory negligence, fault of a third party, they bear the burden of proof of each essential element of that affirmative defense. And that statute essentially says that a lessor can escape liability for a defect in the premises which causes harm only if the lessor can prove two things. And I think at this point it's important to look at a timeline of events. I wonder if I've prepared a very short timeline. You'll need to give that to the courtroom deputy, and he'll give it to us. Thank you. Thanks. In the early morning hours of January 5th, 2016, Rhonda Lamb suspected that the blower of her heater unit was on fire. So she called the after-hours line at Ashford Place. Nobody responded. So at 158 in the morning, she called the fire department. They showed up at 206, investigated, and couldn't find evidence of a fire. Later the next day, she continued smelling what she believes was some sort of smoky smell and reported it to Ashford Place. They hired an outside consultant to come in on January 6th. They investigated it, said the blower motor needs to be replaced. So they acted within one day? Excuse me? So they acted within one day? Yes. And on January 6th, that same day, Ashford Place secured a motor and the maintenance department in-house replaced the motor. That night, a smoke event occurred, and at 2033, Rhonda Lamb called the fire department. They showed up shortly thereafter, and their notes, which are in the record, show that the maintenance department was removing a smoldering blower unit. Rhonda Lamb was taken by ambulance to the hospital at that time. Ashford Place later replaced that smoldering blower unit they had just put in with a new unit that has a different part number, and everything worked fine. So that raises — You don't have a date on your chart for that particular act, the second to the last one, as I recall. No, we don't have — As I recall, it was pretty quick also. It was. One of the weeks and weeks. Right. We don't know the exact date when that happened, but it was — nothing happened after that. It worked properly. Okay. So is it your argument that this pretty quick response is not quick enough? No. The response is that what was the defect at issue? And there are really two questions. What was the defect at issue, and what was the reasonable opportunity to remedy? She reported a defect on the 5th. They investigated it and determined it was defective on the 6th. They repaired it on the 6th, or tried to repair it but didn't repair it, and she was injured on the 6th. So in essence, they never fixed the defect. The district court felt the defect was the 6th, the work they did on the 6th. The defect was the 5th that they never remedied. And that is the essence of the case. 93221 doesn't provide any protection to the defendant under these circumstances because there was both notice of a defect and a reasonable opportunity to repair. If it had been repaired correctly on the 6th, there would have been no second event. There would have been no injury. They had the opportunity to correct it. So you acknowledge 3221 is not strict liability. It's notice and reasonable behavior. Well, actually, no. I don't. It does say a reasonable time to repair. However, the case law says that it involves only strict liability and not negligence claims, and that was one of the issues we raised because they only filed a motion for strict liability. The motion for summary judgment did not address negligence at all. I thought Louisiana courts have construed 3221 to be a negligence regime and not a strict liability regime. No, they haven't. In fact, the defense has cited the Allstate case for that principle, but if you read Allstate, actually it says just the opposite. They did two analyses. They did an analysis under 93221, strict liability, found that it was not applicable. Then they did a separate analysis of negligence. So that case, while cited by the appellee, actually supports our position, and because of that the district court failed to reconsider that issue when it was raised and brought to the court's attention. So the district court was an error in first deciding both negligence and strict liability issues were subsumed and in failing to correct that error on reconsideration. You know, this was a motion for summary judgment, and I think everybody would agree that on summary judgment the movement bears the burden of proof, of demonstrating an absence of material questions of fact. And what are those material questions of fact? There was a defect. There was lack of notice. There was a lack of opportunity to repair, or they actually did remedy the circumstance. And everybody would agree that the nonmoving party can defeat a motion for summary judgment by showing the existence of material questions of fact, but who has the initial burden of proof? Since this is an affirmative defense, the burden of proof rests with the defendant, Ashford Place. Well, doesn't that sort of meld in with the idea that when you move for summary judgment, you've got to show there's no genuine dispute of material facts? So I don't see a real distinction there. Well, that is true. It does meld with that. But the thing is, what have they proven? Have they proven these elements? Have they proven there was a defect? On reconsideration, they allege, oh, clearly there was a defect in the motor. But they had the motor in their possession and destroyed it without any evidence that there wasn't. You raised that in response to the motion for summary judgment? Yes, we did. We raised that. You raised spoliation in your response to the summary judgment motion. We raised spoliation in the reconsideration.  So you didn't raise it in response to the summary judgment motion. Your Honor, I'm not certain. I'd have to check the record. But I believe it was only in the reconsideration. Right. That's my understanding. The district court, because this is an affirmative defense, the defendant has to prove the elements of exculpation under 93221. They have to prove there was a defect and not negligent installation. They have to prove that there was inadequate notice. They have to prove there wasn't a reasonable opportunity to remedy. The district court placed the burden of proof on the plaintiff to prove why the motor burned up. It was not her burden. The defendants destroyed the evidence. So how are we possibly to prove that that motor was defective as opposed to negligent installation? We know they changed the part. There was a different part they put in on January 6th after the motor burned up, and that motor worked properly. But you acknowledge that 3221 says there's liability only if there's a failure to, quote, remedy it within a reasonable time. That is correct. That is correct. It doesn't sound like strict liability. It sounds like you're notified and then you behave reasonably. I understand that, Your Honor. But, unfortunately, the courts say it is a strict liability statute. And, in fact, if you read the exhaustive article by Professor Lonegrass, she goes through an exhaustive listing of why it only applies to strict liability and why it only applies to third-party claims. As a matter of fact, this court has only addressed 93221 four times since it was enacted. In two of those cases, three decisions in 1968, one in 1983. In two of those cases, it was only cited in a footnote and it was incidental. In one of the cases, the first one, 1968, Celestin v. Employers Mutual, 387 Fed Second 539, a decision by Justice Wisdom or Judge Wisdom, this court said that 93221 applies to third-party claims, not to direct two-party claims. And that's precisely what Professor Lonegrass concluded in that law review article. The second case that this court mentioned, 93221, was Volkswagen v. Robertson, in which the issue of knowledge of a lessor of a potential flooding condition after a hurricane was pivotal in denying relief to the lessor. But here we're dealing only with property. That case dealt only with property damage and not personal injury because Civil Code Article 2004 clearly says, any clause is null that in advance excludes or limits the liability of one party for causing physical injury to another. You can in advance exclude property damage but not personal injury. And that is the latest pronouncement of legislative will in Louisiana. And while I have additional time, I really don't need it here, because in summary, RS 93221 doesn't apply under these circumstances because the elements haven't been shown. It does not include negligence. The defendants didn't carry their burden of proving this affirmative defense, and there are disputed questions of fact that should have denied summary judgment in any event. A de novo review of the record, which is the appropriate standard of review, will reveal each of these conclusions. Having reviewed the supplemental of the letter brief we asked for on jurisdiction, and, of course, we determine whether we have jurisdiction, but it's nice to know the position of the parties. Having read the Ashford Place Apartments letter brief, do you agree that because you failed to move for remand that we have jurisdiction? I would agree that the forum defendant rule is applicable here, Your Honor. This is a little somewhat different. We didn't address that issue. We simply addressed the improper joinder that the Court asked us to talk about. No. We had asked you to address the fact that because there was a defendant sued whether there was jurisdiction. And, of course, improper joinder is one of the bases, but the other side points out that for this type of basis for remand, if you don't do it and the case goes to judgment, it's too late to pursue it now. We have a case on point in our circuit on that. I was just curious as to your take on the case he cites in his brief. I believe that is an accurate recitation of the law, Your Honor. All right. Thank you. Okay. All right. You've saved time for rebuttal, Mr. Medea. Thank you. Mr. Ryan. Thank you. May it please the Court. Ike Ryan for Ashford Place Apartments, LLC, MRC Development, LLC, and Heather Bamberg. Your Honor, I'm going to be pretty brief. The really viable fact of the case, this is about a newly installed motor that failed in the plaintiff's apartment. Mr. Robinson, who is the maintenance man for the apartments, installed and tested the motor and confirmed that it was working properly. Later that evening, plaintiff called to complain, but before Mr. Robinson and Ms. Bamberg could make it back, the plaintiff was allegedly overcome by fumes. The law applicable is, I think, specialized because this lease has an indemnity provision which says, quote, resident assumes full responsibility for the lease premises and then goes on for an actual surprising amount of time talking about the different indemnities, but that puts this lease squarely within the ambit of 93221, which says, when a lessee assumes responsibility for the lease premises, the owner is not liable for injury to the lessee unless the owner knew or should have known of the defect and failed to remedy it timely. So when the MSJ was filed, Ashford Place's counsel cited the statute, filed the case, but they did not have any knowledge of this failed motor before Ms. Rondeland was overcome by fumes. They were on their way to address the situation when it happened. They did not have an opportunity to fix it. Now, I would say that there is a lot of briefing has gone on in this case about conflicts in the law and the civil code, the statutes, the leases, public policy. But really what I think the Court needs to focus on is what was in the opposition that was filed by plaintiff. There was excerpts of Ms. Bamberg's deposition, a copy of the fire department report, and really nothing else. So there was no evidence of Mr. Robinson's negligence in installing an improper  motor. There was no evidence from an engineer or a HVAC professional saying that the Goodman and Mana replacement motor, GD-MBT, was somehow the inappropriate replacement part for this system. What we basically have is a case where the plaintiff failed to prove a prima facie case of negligence, whether you want to call it strict liability of the opinion that strict liability has largely been abrogated in Louisiana. And while we still call 2317 as a shorthand strict liability because you can be liable for an object without your active negligence, it really requires your knowledge of the defect in the product and your failure to remediate it, which just brings you right back around to negligence. Professor Mare, who is my torts professor, used to say, you know, it doesn't really matter what you want to call it in the shorthand. It all comes back to a duty-risk analysis. And I think that what you get here in this case is you get a failure of the plaintiffs to satisfy the elements of the duty-risk analysis, whether you want to call it strict liability or anything else. And I think that Judge James put his finger on it. He says right here, page 9 of his slip of opinion, plaintiff, however, provides no evidence, footnote 11, of when, how, or why defendants should have known before she reported fumes, footnote 12, that Robinson installed the replacement motor incorrectly, footnote 13, or that Robinson installed the wrong motor or a defective motor. Basically, he's pointing out that there's no evidence of anything that Ashford Place did negligently or inappropriately in this case. So I think we could go off on a big rabbit hunt about conflicts in the law and things like that, but I don't think that it's – I don't think this case is ripe for that, because you have a simple failure of plaintiffs to induce a prima facie case of negligence or strict liability or whatever you want to call the hybrid liability under 93221. And I would like to point out that counsel says, well, there's different part numbers. Well, yeah, one's a Goodman and Manna part and one's a Ream part, but it's still a half-horsepower electric motor. And, you know, when I buy my car, it had BF Goodrich tires on it. When they wore out, I like Goodyear. I put Goodyear tires on my car. They have a different part number, but it doesn't mean I'm negligent in putting a different brand of tire on my car. So I think when counsel gets back up to rebut, I think the Court should ask him, what evidence did he attach in opposition to summary judgment to show that he could satisfy the elements of a negligence case? What elements can he show that Mr. Robinson was negligent in installing this part or that Ashford Police Apartments was negligent in ordering the wrong part for this equipment? That's basically all I have. I'm happy to answer the Court's questions if the Court has any. All right. Thank you, Mr. Ryan. Oh, go ahead. The little unusual wrinkle in this case, and I'm not prejudging anything that's for summary judgment or the response to it, but the unusual wrinkle is the fact that this motor was repaired twice. The first repair, you know, plaintiff claims didn't fix it. And when you look at the plain language of the statute, it says, the owner knew or should have known of the defect. Well, the owner certainly knew because she had reported it on the morning of the 5th, or had received notice thereof, that's the way the owner knew about it, and failed to remedy it within a reasonable time. Well, there's no question you replaced the engine within a reasonable time, but did you remedy it? So it seems to me we're looking more at the first repair than at the second repair. And, of course, we'll just have to see what's in the summary judgment record on that. But what's your position on that? A couple of things, Your Honor. I think it's an interesting point. And I would say that on appeal, the plaintiff has expanded the timeline back to the first repair. There's no doubt that no damage was done to Ms. Lamb by the first repair or the first noticing of a smoky smell in her apartment. The plaintiff has conceded that my damages all stem from the second installation of the motor. So I think that I have to wonder, why do you extend the timeline back there to the first repair? Because that's the first notice of the defect. And an immediate response by Ashford Place to come out and install a brand-new in-box replacement blower motor. Apparently did not remedy the defect because we had smoke a second time, according to what's in the summary judgment record. And, Your Honor, you know, as an appellate lawyer, I don't go outside the record, but I have had a motor case early in my career. Stick to the record. Well, motors can burn up. I think as plaintiffs even concede at page 44 of their brief that that was a third option, that the motor could have simply failed out of the box. You keep saying that it must have been installed improperly or it must have been the wrong part. Footnote, okay, yes, the third option was that the motor could have failed too. But even going back to the very beginning of this chart, how much time are we talking about from step one to? We're talking about two days. Right. The first day, she calls, complains. She calls out the fire department. The fire department comes. We bring, call in an HVAC repair service. They recommend replacing the blower motor. It's repaired the day that they recommend it. Then, unfortunately, that motor failed and causes the smoke event, which causes damage to the plaintiff. So in my logic, the real beginning part of the timeline is when this motor is replaced. Right. But even going back to the earliest, we're still talking about just a few days? It would be the day before. Any other questions, Your Honor? All right. Thank you, Mr. O'Brien. Mr. Medea, you've saved time for me. Your Honor, as I mentioned on the affirmative burden of proof that the defendant has, if they are going to assert 93221, we've cited two cases, the Mendoza and the Slaughter cases, which specifically went through that same analysis and said that while you may have shown that you did not actually know of the defect, there's a question as to whether you might have known. What have they submitted in support of trying to say they did not know and could not have known? An affidavit of Heather Bamberg, which is full of rank hearsay. I heard someone told me this, or they said that, or they said they did this. None of that is admissible evidence. All we have is her evidence that she went out herself and got a motor for the maintenance department to install. Did you seek to exclude parts of her affidavit? No, we did not. I didn't think you did. Judge Ho, the time period, while it may have been a day, may have been two days to do the installation. The question is however long that was is really not material because it was clearly sufficient time because they did the work. If it was one hour and they did the work but they did it wrong, they had enough time to do it. And the fact is there was a defect that was noted. Notice was given. They took the opportunity to repair it. They repaired it incorrectly. The defect was never remedied and the injuries occurred. This was simply a motion. The statute says you have liability if there's a failure to remedy within a reasonable time. That is correct. What is your argument that two days is not a reasonable time? It is a reasonable time. The fact is the statute is written in the negative, so it's a little awkward discussing it. But the point is what is a reasonable time to remedy the defect? The time that they took. They had the time. They got the part. They took the old one out. They put a new one in. If they had done it correctly, that would have remedied the defect. That was a reasonable period of time. Yet they never remedied the defect. So were you just going on the old recipsa locator? I can certainly, as this Court's standard jury. Meaning they put in a new part and it didn't work, so obviously they didn't put in the correct part, are they? Is that what you're saying? I am, as a plaintiff, I am entitled to rely on that. But also I'm entitled to rely on circumstantial evidence, as this Court's standard jury charge states. And that circumstantial evidence is that they took one part, they put it in, and whether it was the right part or the wrong part or they put it in incorrectly, it didn't work and it failed. So they did not remedy the initial defect that was reported. And all of those actions are questions of fact that should have precluded summary judgment in any event. So you're asking for a jury trial? Yes, Your Honor. All right. Thank you, Mr. McNamara. Thank you. Your case is under submission.